HARANG v. CRUSEL

———

(October 20, 1930. Opinion and Decree.)

———

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, attorneys for plaintiff, appellee.

Brewer & Sere, of New Orleans, attorneys for defendant, appellant.

WESTERFIELD, J. This suit grows out of a contract between plaintiff and defendant for the sale of certain stock. The contract was in the form of a letter addressed by defendant to plaintiff and accepted by plaintiff.

The suit is for the sum of $300, approximately one-half of the expenses incurred by the plaintiff, Harang, in an effort to sell the stock, and is based upon the following clause in the contract:

"It is further understood that in the event that the sales of Petroleum Royalties Company shares of stock will yield sufficient profit to J. Edw. Crusel, he will, out of the profits from commissions or brokerages which will accrue to him from such sales by you or your employees or representatives, pay one half of such expenses as far as said commissions or brokerages will go and that he will be beneficiary of all income over and above said one half of expenses."

It is admitted that Crusel received as much as $300 in commissions from stock sold by Harang under his contract, but liability is denied upon the ground that the contract obligated Harang to sell 100,000 shares of stock at $1.50 per share and that he failed to sell more than 3,000 shares, and upon the further ground that he failed to create a proper selling organization and also failed to continue his efforts to sell the stock for a period of six months, all in violation of his contract with Crusel, and that, having failed to perform his part

of the agreement, plaintiff is without standing in court to enforce a contract, whose provisions he had violated. McLemore v. Hemler, 4 La. App. 388.

The contention that Harang had agreed to sell 100,000 shares is based upon the following provision of the contract:

"Under this agreement you are allotted one hundred thousand (100,000) shares of Petroleum Royalties Company 12% preferred cumulative stock of par value of $1.00 per share, which you are under obligation to sell for the price and sum of $1.50 per share."

Our appreciation of the effect of this clause is to obligate the plaintiff to sell the stock at $1.50 per share and not to require him to sell 100,000 shares as defendant contends.

It is said that a proper selling organization was not maintained because of the following provision of the contract:

"It is understood that you (Harang) will create and maintain a sales organization composed of reliable and trustworthy men or women. * * * "

The record indicates that Harang did employ certain salesmen, and there is no contention that they were unreliable or untrustworthy, and there is no requirement in the contract which obligated him to maintain any specific kind of organization. We are therefore not impressed with this defense.

The final contention of the defendant is that plaintiff was in default, in that he ceased all efforts to sell the stock before the expiration of six months. The contract reads as follows:

"It is understood that you (Harang) have for the sale of the 100,000 shares of stock a period of six months in which to place and dispose of the said 100,000 shares of stock to buyers."

After working several months and incurring an expense in excess of $700, Harang called upon Crusel under section 10a of his contract to defray one-half of all expenses. He had only sold 3,000 shares and was having great difficulty in disposing of the stock. He testified that he declined to go further because Crusel refused to pay any part of the expense. We are of the opinion that a reasonable interpretation of the clause relied on would obligate Crusel to participate in the expenses to the extent which his commissions received from Harang's efforts would go, and we cannot adopt the view advanced by counsel for the defendant that the words "sufficient profit to J. Edw. Crusel" mean profits which Crusel would consider sufficient and are of opinion that those words in connection with the remainder of that section of the contract mean that if Crusel received from Harang's sales commissions sufficient to pay one-half of the selling expenses, he should pay one-half, but that if he failed to receive enough commissions to discharge one-half of that expense that he should then pay over the amount he received as far as it would go in partial discharge of the expenses.

As we view the transaction between plaintiff and defendant, it was an unsuccessful effort to dispose of a large number of shares of stock, the value of which seems to have been impressed upon defendant, for he allotted 100,000 shares to plaintiff and permitted him a period of six months to dispose of them. In other words, the attitude of defendant, as we understand it, from his letter which became the contract between the parties, was that of one who was granting a privilege and a favor to plaintiff. The project failed. Plaintiff expended more than $700 in an effort to succeed, and we see no reason why defendant should not return the commissions received by him in partial settlement of the expense involved, for that is what we understand the contract plainly obligates him to do.

This was the opinion entertained by the trial court and we believe it to be correct.

For the reasons assigned the judgment appealed from is affirmed.